# Exhibit 8

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**
**FORM 10-Q**

(Mark One)

☒  **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
**For the quarterly period ended June 30, 2021**
**OR**

☐  **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
**For the transition period from _____ to _____**

**Commission File Number: 0-19034**

# REGENERON PHARMACEUTICALS, INC.

*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| **New York** | **13-3444607** |
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |

**777 Old Saw Mill River Road, Tarrytown, New York 10591-6707**
*(Address of principal executive offices, including zip code)*

**(914) 847-7000**
*(Registrant's telephone number, including area code)*

Securities registered pursuant to Section 12(b) of the Act:

| *Title of each class* | *Trading Symbol* | *Name of each exchange on which registered* |
|---|---|---|
| **Common Stock - par value $.001 per share** | **REGN** | **NASDAQ Global Select Market** |

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.    Yes ☒    No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files).    Yes ☒    No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☒    Accelerated filer ☐    Non-accelerated filer ☐    Smaller reporting company ☐    Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act.    ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).    Yes ☐    No ☒

The number of shares outstanding of each of the registrant's classes of common stock as of July 23, 2021:

| Class of Common Stock | Number of Shares |
|---|---|
| Class A Stock, $.001 par value | 1,848,970 |
| Common Stock, $.001 par value | 105,106,409 |

**REGENERON PHARMACEUTICALS, INC.**
**QUARTERLY REPORT ON FORM 10-Q**
**TABLE OF CONTENTS**

| | | **Page Numbers** |
|---|---|---|
| **PART I** | **FINANCIAL INFORMATION** | |
| Item 1. | Financial Statements (unaudited) | 2 |
| | Condensed Consolidated Balance Sheets as of June 30, 2021 and December 31, 2020 | 2 |
| | Condensed Consolidated Statements of Operations and Comprehensive Income for the Three and Six Months Ended June 30, 2021 and 2020 | 3 |
| | Condensed Consolidated Statements of Stockholders' Equity for the Three and Six Months Ended June 30, 2021 and 2020 | 4 |
| | Condensed Consolidated Statements of Cash Flows for the Six Months Ended June 30, 2021 and 2020 | 6 |
| | Notes to Condensed Consolidated Financial Statements | 7 |
| Item 2. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 24 |
| Item 3. | Quantitative and Qualitative Disclosures About Market Risk | 49 |
| Item 4. | Controls and Procedures | 49 |
| **PART II** | **OTHER INFORMATION** | |
| Item 1. | Legal Proceedings | 50 |
| Item 1A. | Risk Factors | 50 |
| Item 2. | Unregistered Sales of Equity Securities and Use of Proceeds | 85 |
| Item 6. | Exhibits | 85 |
| **SIGNATURE PAGE** | | 86 |

"ARCALYST®," "Evkeeza®," "EYLEA®," "Inmazeb™," "Libtayo®" (in the United States), "Praluent®" (in the United States), "REGEN-COV™," "Regeneron®," "Regeneron Genetics Center®," "Ronapreve™," "*Veloci-Bi*®," "*VelociGene*®," "*VelociHum*®," "*VelociMab*®," "*VelocImmune*®," "*VelociMouse*®," "*VelociSuite*®," "*VelociT*™," and "ZALTRAP®" are trademarks of Regeneron Pharmaceuticals, Inc. Trademarks and trade names of other companies appearing in this report are, to the knowledge of Regeneron Pharmaceuticals, Inc., the property of their respective owners. This report refers to products of Regeneron Pharmaceuticals, Inc., its collaborators, and other parties. Consult the product label in each territory for specific information about such products.

**11. Statement of Cash Flows**

The following provides a reconciliation of cash, cash equivalents, and restricted cash reported within the Condensed Consolidated Balance Sheet to the total of the same such amounts shown in the Condensed Consolidated Statement of Cash Flows:

| | June 30, | | | |
|---|---|---|---|---|
| *(In millions)* | 2021 | | 2020 | |
| Cash and cash equivalents | $ | 2,072.2 | $ | 1,992.2 |
| Restricted cash included in Other noncurrent assets | | 12.5 | | 12.5 |
| Total cash, cash equivalents, and restricted cash shown in the Condensed Consolidated Statement of Cash Flows | $ | 2,084.7 | $ | 2,004.7 |

Restricted cash consists of amounts held by financial institutions pursuant to contractual arrangements.

*Supplemental disclosure of non-cash investing and financing activities*

The following amounts were included in accounts payable, accrued expenses, and other liabilities:

| *(In millions)* | June 30, 2021 | | December 31, 2020 | | June 30, 2020 | | December 31, 2019 | |
|---|---|---|---|---|---|---|---|---|
| Accrued capital expenditures | $ | 93.4 | $ | 83.6 | $ | 87.4 | $ | 133.7 |

As described in Note 10, during the three months ended June 30, 2020, we purchased (by issuing a credit towards the amount owed by Sanofi) shares of our Common Stock from Sanofi to satisfy Sanofi's funding obligation related to Libtayo development costs.

**12. Legal Matters**

From time to time, the Company is a party to legal proceedings in the course of the Company's business. Costs associated with the Company's involvement in legal proceedings are expensed as incurred. The outcome of any such proceedings, regardless of the merits, is inherently uncertain. The Company recognizes accruals for loss contingencies associated with such proceedings when it is probable that a liability will be incurred and the amount of loss can be reasonably estimated. As of June 30, 2021 and December 31, 2020, the Company's accruals for loss contingencies were not material. If the Company were unable to prevail in any such proceedings, its consolidated financial position, results of operations, and future cash flows may be materially impacted.

*Proceedings Relating to Praluent (alirocumab) Injection*

As described in greater detail below, the Company is currently a party to patent infringement actions initiated by Amgen Inc. (and/or its affiliated entities) against the Company and/or Sanofi (and/or the Company's and Sanofi's respective affiliated entities) in a number of jurisdictions relating to Praluent. See Note 3 for a description of the Company's and Sanofi's arrangement regarding the costs resulting from or associated with such actions.

United States

In the United States, Amgen has asserted claims of U.S. Patent Nos. 8,829,165 (the "'165 Patent") and 8,859,741 (the "'741 Patent"), and seeks a permanent injunction to prevent the Company and the Sanofi defendants from commercial manufacturing, using, offering to sell, or selling within the United States (as well as importing into the United States) (collectively, "Commercializing") Praluent. Amgen also seeks a judgment of patent infringement of the asserted patents, monetary damages (together with interest), costs and expenses of the lawsuits, and attorneys' fees. As described in greater detail under "Second Jury Trial and Appeal" below, on February 11, 2021, the Federal Circuit (as defined below) affirmed the lower court's decision that certain of Amgen's asserted patent claims are invalid based on lack of enablement.

17

*First Jury Trial and Appeal.* The first jury trial in this litigation (the "First Trial") was held in the United States District Court for the District of Delaware (the "District Court") from March 8 to March 16, 2016. During the course of the First Trial, the District Court ruled as a matter of law in favor of Amgen that the asserted patent claims were not obvious, and in favor of the Company and the Sanofi defendants that there was no willful infringement of the asserted patent claims by the Company or the Sanofi defendants. On March 16, 2016, the jury returned a verdict in favor of Amgen in the First Trial, finding that the asserted claims of the '165 and '741 Patents were not invalid based on either a lack of written description or a lack of enablement. On October 5, 2017, the United States Court of Appeals for the Federal Circuit (the "Federal Circuit") reversed in part the District Court's decision and remanded for a new trial on the issues of written description and enablement. In addition, it affirmed the District Court's ruling that Amgen's patents were not obvious.

*Second Jury Trial and Appeal.* On January 3, 2019, the District Court held oral argument in the remanded proceedings on the Company and the Sanofi defendants' motion for judgment on the pleadings regarding Amgen's willful infringement claim. On January 18, 2019, the District Court entered an order (i) denying the Company and the Sanofi defendants' motion for summary judgment on validity, (ii) denying Amgen's motion for partial summary judgment on estoppel, and (iii) granting the Company and the Sanofi defendants' cross-motion for summary judgment on estoppel. On February 8, 2019, the District Court granted the Company and the Sanofi defendants' motion for judgment on the pleadings, thereby dismissing Amgen's claim of willful infringement. The second jury trial in this litigation (the "Second Trial") was held before the District Court in February 2019 to determine the validity of Amgen's asserted patent claims. On February 25, 2019, the jury returned a verdict in the Second Trial generally in favor of Amgen, finding that two claims of the '165 Patent and one claim of the '741 Patent were not invalid. The jury also found that two claims of the '165 Patent were invalid for lack of adequate written description while rejecting the lack of enablement challenges to those two claims. On August 28, 2019, the District Court ruled as a matter of law that Amgen's asserted patent claims are invalid based on lack of enablement. The District Court also conditionally denied the Company and the Sanofi defendants' motion for a new trial. On October 23, 2019, Amgen filed a notice of appeal of the District Court's decision with the Federal Circuit. An oral hearing before the Federal Circuit was held on December 9, 2020. On February 11, 2021, the Federal Circuit affirmed the District Court's decision that certain of Amgen's asserted patent claims are invalid based on lack of enablement. On April 14, 2021, Amgen filed a petition for a rehearing en banc, which was denied on June 21, 2021.

*Injunctive Relief Proceedings.* On March 18, 2019, Amgen filed a renewed motion for a permanent injunction to prohibit the Company and the Sanofi defendants from Commercializing Praluent in the United States (a "Permanent Injunction"), and an oral hearing on this motion was held in June 2019. Previously, the Federal Circuit stayed and then vacated a Permanent Injunction granted by the District Court in connection with the First Trial. On August 28, 2019, the District Court dismissed as moot Amgen's renewed motion for a Permanent Injunction.

Europe

Amgen has asserted European Patent No. 2,215,124 (the "'124 Patent"), which pertains to PCSK9 monoclonal antibodies, in the countries in Europe discussed below. As described in greater detail under "EPO Proceedings" below, in October 2020 the '124 Patent claims directed to compositions of matter and medical use were ruled invalid by the Technical Board of Appeal (the "TBA") of the European Patent Office (the "EPO"). This decision has impacted or will impact each of the infringement proceedings based on the '124 Patent discussed below.

*EPO Proceedings.* The '124 Patent was subject to opposition proceedings in the EPO seeking to invalidate certain of its claims, which were initiated by Sanofi on February 24, 2016 and, separately, by the Company, Sanofi, and several other opponents on November 24, 2016. On December 13, 2017, the Opposition Division of the EPO issued a preliminary, non-binding opinion (the "Preliminary Opinion") regarding the validity of the '124 Patent, indicating that it currently considers the claims of a new request filed by Amgen in response to the opposition to satisfy the requirements for patentability. An oral hearing on the oppositions against the '124 Patent was held on November 28–30, 2018, at which the Opposition Division upheld the validity of the '124 Patent's claims in amended form. The Company and Sanofi filed notices of appeal to the TBA on November 30, 2018. An oral hearing before the TBA was held on October 28–29, 2020, at which the TBA ruled that the '124 Patent claims directed to compositions of matter and medical use relevant to Praluent were invalid based on a lack of inventive step.

*United Kingdom.* On July 25, 2016, Amgen filed a lawsuit against Regeneron, Sanofi-Aventis Groupe S.A., Sanofi-Synthelabo Limited, Aventis Pharma Limited, Sanofi Winthrop Industrie S.A., and Sanofi-Aventis Deutschland GmbH in the English High Court of Justice, Chancery Division, Patents Court, in London, seeking a declaration of infringement of the '124 Patent by Praluent. The lawsuit also seeks a permanent injunction, damages, an accounting of profits, and costs and interest. On February 8, 2017, the court temporarily stayed this litigation on terms mutually agreed by the parties. On October 22, 2020, the court lifted the stay upon application by the Company and the Sanofi defendants, and the case will proceed in due course.

*Germany.* On July 25, 2016, Amgen filed a lawsuit for infringement of the '124 Patent against Regeneron, Sanofi-Aventis Groupe S.A., Sanofi Winthrop Industrie S.A., and Sanofi-Aventis Deutschland GmbH in the Regional Court of Düsseldorf,

Table of Contents

Germany (the "Düsseldorf Regional Court"), seeking a permanent injunction, an accounting of marketing activities, a recall of Praluent and its removal from distribution channels, and damages. On November 14, 2017, the Düsseldorf Regional Court issued a decision staying the infringement proceedings until a decision of the Opposition Division of the EPO concerning the pending opposition filed by the Company, Sanofi, and several other opponents against the '124 Patent (as discussed above). Following Amgen's request to reopen the proceedings in light of the issuance of the Preliminary Opinion, the Düsseldorf Regional Court held an oral hearing on September 11, 2018 and ruled on December 10, 2018 that the infringement proceedings would be reopened. On July 11, 2019, the Düsseldorf Regional Court found that Praluent infringes the '124 Patent and granted an injunction prohibiting the Company and Sanofi's manufacture, sale, and marketing of Praluent in Germany (the "July 11 Decision"). Amgen subsequently enforced the injunction and, as a result, commercialization of Praluent in Germany was discontinued. On July 12, 2019, the Company and Sanofi appealed the July 11 Decision to the Higher Regional Court of Düsseldorf (the "Higher Regional Court"). On August 5, 2019 and October 31, 2019, the Higher Regional Court denied the Company and Sanofi's requests for a stay of preliminary enforcement of the July 11 Decision pending the appeal on the merits. On November 3, 2020, Amgen filed a motion withdrawing this lawsuit without prejudice. An oral hearing on the merits of the appeal to the Higher Regional Court was held on November 5, 2020, at which the Higher Regional Court overturned the July 11 Decision.

*France.* On September 26, 2016, Amgen filed a lawsuit for infringement of the '124 Patent in the Tribunal de grande instance in Paris, France against Regeneron, Sanofi-Aventis Groupe S.A., Sanofi Winthrop Industrie S.A., and Sanofi Chimie (subsequently added as a defendant). Amgen is seeking the prohibition of allegedly infringing activities with a €10,000 penalty per drug unit of Praluent produced in violation of the court order sought by Amgen; an appointment of an expert for the assessment of damages; disclosure of technical (including supply-chain) and accounting information to the expert and the court; provisional damages of €10.0 million (which would be awarded on an interim basis pending final determination); reimbursement of costs; publication of the ruling in three newspapers; and provisional enforcement of the decision to be issued, which would ensure enforcement of the decision (including any provisional damages) pending appeal. Amgen is not seeking a preliminary injunction in this proceeding at this time. On April 10, 2017, the Company and the Sanofi parties filed briefs seeking invalidation of certain of the claims of the '124 Patent, and Amgen filed a response on July 28, 2017. On June 22, 2021, the lawsuit was dismissed.

*Other.* In December 2019, Amgen also filed lawsuits in the Netherlands, Italy, and Spain for infringement of the relevant designation of the '124 Patent in each such jurisdiction. The Company was not named as a defendant in any of these actions. Each of these lawsuits was dismissed in February 2021.

Japan

As previously reported, on March 31, 2020, Amgen filed a lawsuit in the Tokyo District Court against Sanofi K.K. seeking damages incurred by Amgen as a result of the earlier finding of infringement of Amgen's Japanese Patent Nos. 5,906,333 and 5,705,288 by the Tokyo District Court Civil Division. The Company has not been named as a defendant in this damages action.

*Proceedings Relating to Dupixent (dupilumab) Injection*

United States

On March 20, 2017, the Company, Sanofi-Aventis U.S. LLC, and Genzyme Corporation filed a lawsuit against Amgen and Immunex Corporation, a wholly owned subsidiary of Amgen, in the United States District Court for the District of Massachusetts seeking a declaratory judgment that the Company's and the other plaintiffs' Commercializing of Dupixent does not directly or indirectly infringe U.S. Patent No. 8,679,487 (the "'487 Patent") owned by Immunex Corporation relating to antibodies that bind the human interleukin-4 receptor. On May 1, 2017, the Company and the other plaintiffs filed a notice of voluntary dismissal of this action without prejudice.

19

On March 23, 2017, the Company, Sanofi-Aventis U.S. LLC, and Genzyme Corporation initiated an *inter partes* review ("IPR") in the United States Patent and Trademark Office ("USPTO") seeking a declaration of invalidity of the '487 Patent. On July 28 and 31, 2017, the same parties filed two additional IPR petitions in the USPTO seeking declarations of invalidity of the '487 Patent based on different grounds (the "Additional IPR Petitions"). On October 4, 2017, the Patent Trial and Appeal Board ("PTAB") of the USPTO issued a decision on the first IPR petition and declined to institute an IPR proceeding to review the validity of the '487 Patent. On February 15, 2018, the PTAB issued two decisions instituting the Company's and Sanofi's Additional IPR Petitions on all claims of the '487 Patent for which review had been requested. Oral hearings on the Additional IPR Petitions before the PTAB were held on November 14, 2018. On February 14, 2019, the PTAB issued final written decisions on the Additional IPR Petitions, invalidating all 17 claims of the '487 Patent as obvious based on one of the Additional IPR Petitions while declining to hold the challenged claims of the '487 Patent invalid based on the other. In April 2019, the parties filed notices of appeal with the Federal Circuit appealing the PTAB's respective adverse final written decisions on the Additional IPR Petitions, and oral argument was held on August 5, 2020. On October 13, 2020, the Federal Circuit affirmed the PTAB's decision on the Additional IPR Petition that invalidated all 17 claims of the '487 Patent as obvious. On March 11, 2021, Immunex filed a petition for writ of certiorari with the United States Supreme Court, which was denied on June 21, 2021. The '487 Patent expired in May 2020 following Immunex's filing of a terminal disclaimer with the USPTO.

On April 5, 2017, Immunex Corporation filed a lawsuit against the Company, Sanofi, Sanofi-Aventis U.S. LLC, Genzyme Corporation, and Aventisub LLC in the United States District Court for the Central District of California seeking a judgment of patent infringement of the '487 Patent and a declaratory judgment of infringement of the '487 Patent, in each case by the Company's and the other defendants' Commercializing of Dupixent; monetary damages (together with interest); an order of willful infringement of the '487 Patent, which would allow the court in its discretion to award damages up to three times the amount assessed; costs and expenses of the lawsuit; and attorneys' fees. Immunex is not seeking an injunction in this proceeding at this time. On June 21, 2017, the court denied a motion to dismiss Immunex's complaint previously filed by the Company and the Sanofi parties. On June 28, 2017, the Company and the Sanofi parties filed an answer to Immunex's complaint and counterclaims against Immunex and Amgen (which was amended on October 31, 2017 to, among other things, add an inequitable conduct allegation), and Immunex and Amgen filed an answer to the counterclaims on July 28, 2017. A combined hearing on the construction of certain disputed claim terms of the '487 Patent and the Company and the Sanofi parties' motion for summary judgment on the issue of indefiniteness of the '487 Patent claims was held on July 12, 2018. On August 24, 2018, the court issued an order denying this motion and construed the disputed claim terms as proposed by Amgen. On February 28, 2019, the court granted a joint stipulation by the parties to stay the litigation pending resolution of the appeals of the PTAB's final written decisions on the Additional IPR Petitions discussed above. On August 3, 2021, the court granted a motion to dismiss the lawsuit, dismissing all of Immunex's claims with prejudice.

Europe

On September 30, 2016, Sanofi initiated a revocation proceeding in the United Kingdom to invalidate the U.K. counterpart of European Patent No. 2,292,665 (the "'665 Patent"), another patent owned by Immunex relating to antibodies that bind the human interleukin-4 receptor. At the joint request of the parties to the revocation proceeding, the U.K. Patents Court ordered on January 30, 2017 that the revocation action be stayed pending the final determination of the currently pending EPO opposition proceedings initiated by the Company and Sanofi in relation to the '665 Patent. The oral hearing before the EPO on the oppositions occurred on November 20, 2017, at which the claims of the '665 Patent were found invalid and the patent was revoked. A final written decision of revocation of the '665 Patent was issued by the EPO on January 4, 2018. Immunex filed a notice of appeal of the EPO's decision on January 31, 2018, and an oral hearing before the TBA has been scheduled for March 2022. On September 20, 2017 and September 21, 2017, respectively, the Company and Sanofi initiated opposition proceedings in the EPO against Immunex's European Patent No. 2,990,420 (the "'420 Patent"), a divisional patent of the '665 Patent (*i.e.*, a patent that shares the same priority date, disclosure, and patent term of the parent '665 Patent but contains claims to a different invention). The oral hearing before the EPO on the oppositions occurred on February 14–15, 2019, at which the '420 Patent was revoked in its entirety. Immunex filed a notice of appeal of the EPO's decision on May 31, 2019, and an oral hearing before the TBA has been scheduled for March 2022. The original patent term of the Immunex patents expired in May 2021.

*Proceedings Relating to EYLEA (aflibercept) Injection*

On January 7, 2021, Chengdu Kanghong Pharmaceutical Group Co., Ltd. ("Chengdu Kanghong") filed an IPR petition in the USPTO against the Company's U.S. Patent No. 10,464,992 (the "'992 Patent") and a post-grant review petition against the Company's U.S. Patent No. 10,828,345 (the "'345 Patent") seeking declarations of invalidity of the '992 Patent and '345 Patent. On June 23, 2021, Chengdu Kanghong filed motions to dismiss each of these petitions and terminate the respective proceedings, which were granted by the USPTO on June 25, 2021.

On February 11, 2020, anonymous parties filed two requests for *ex parte* reexamination of the Company's U.S. Patent No. 10,406,226 and the '992 Patent, and the USPTO has granted both requests to initiate reexamination proceedings.

20

On March 23, 2017, the Company, Sanofi-Aventis U.S. LLC, and Genzyme Corporation initiated an *inter partes* review ("IPR") in the United States Patent and Trademark Office ("USPTO") seeking a declaration of invalidity of the '487 Patent. On July 28 and 31, 2017, the same parties filed two additional IPR petitions in the USPTO seeking declarations of invalidity of the '487 Patent based on different grounds (the "Additional IPR Petitions"). On October 4, 2017, the Patent Trial and Appeal Board ("PTAB") of the USPTO issued a decision on the first IPR petition and declined to institute an IPR proceeding to review the validity of the '487 Patent. On February 15, 2018, the PTAB issued two decisions instituting the Company's and Sanofi's Additional IPR Petitions on all claims of the '487 Patent for which review had been requested. Oral hearings on the Additional IPR Petitions before the PTAB were held on November 14, 2018. On February 14, 2019, the PTAB issued final written decisions on the Additional IPR Petitions, invalidating all 17 claims of the '487 Patent as obvious based on one of the Additional IPR Petitions while declining to hold the challenged claims of the '487 Patent invalid based on the other. In April 2019, the parties filed notices of appeal with the Federal Circuit appealing the PTAB's respective adverse final written decisions on the Additional IPR Petitions, and oral argument was held on August 5, 2020. On October 13, 2020, the Federal Circuit affirmed the PTAB's decision on the Additional IPR Petition that invalidated all 17 claims of the '487 Patent as obvious. On March 11, 2021, Immunex filed a petition for writ of certiorari with the United States Supreme Court, which was denied on June 21, 2021. The '487 Patent expired in May 2020 following Immunex's filing of a terminal disclaimer with the USPTO.

On April 5, 2017, Immunex Corporation filed a lawsuit against the Company, Sanofi, Sanofi-Aventis U.S. LLC, Genzyme Corporation, and Aventisub LLC in the United States District Court for the Central District of California seeking a judgment of patent infringement of the '487 Patent and a declaratory judgment of infringement of the '487 Patent, in each case by the Company's and the other defendants' Commercializing of Dupixent; monetary damages (together with interest); an order of willful infringement of the '487 Patent, which would allow the court in its discretion to award damages up to three times the amount assessed; costs and expenses of the lawsuit; and attorneys' fees. Immunex is not seeking an injunction in this proceeding at this time. On June 21, 2017, the court denied a motion to dismiss Immunex's complaint previously filed by the Company and the Sanofi parties. On June 28, 2017, the Company and the Sanofi parties filed an answer to Immunex's complaint and counterclaims against Immunex and Amgen (which was amended on October 31, 2017 to, among other things, add an inequitable conduct allegation), and Immunex and Amgen filed an answer to the counterclaims on July 28, 2017. A combined hearing on the construction of certain disputed claim terms of the '487 Patent and the Company and the Sanofi parties' motion for summary judgment on the issue of indefiniteness of the '487 Patent claims was held on July 12, 2018. On August 24, 2018, the court issued an order denying this motion and construed the disputed claim terms as proposed by Amgen. On February 28, 2019, the court granted a joint stipulation by the parties to stay the litigation pending resolution of the appeals of the PTAB's final written decisions on the Additional IPR Petitions discussed above. On August 3, 2021, the court granted a motion to dismiss the lawsuit, dismissing all of Immunex's claims with prejudice.

Europe

On September 30, 2016, Sanofi initiated a revocation proceeding in the United Kingdom to invalidate the U.K. counterpart of European Patent No. 2,292,665 (the "'665 Patent"), another patent owned by Immunex relating to antibodies that bind the human interleukin-4 receptor. At the joint request of the parties to the revocation proceeding, the U.K. Patents Court ordered on January 30, 2017 that the revocation action be stayed pending the final determination of the currently pending EPO opposition proceedings initiated by the Company and Sanofi in relation to the '665 Patent. The oral hearing before the EPO on the oppositions occurred on November 20, 2017, at which the claims of the '665 Patent were found invalid and the patent was revoked. A final written decision of revocation of the '665 Patent was issued by the EPO on January 4, 2018. Immunex filed a notice of appeal of the EPO's decision on January 31, 2018, and an oral hearing before the TBA has been scheduled for March 2022. On September 20, 2017 and September 21, 2017, respectively, the Company and Sanofi initiated opposition proceedings in the EPO against Immunex's European Patent No. 2,990,420 (the "'420 Patent"), a divisional patent of the '665 Patent (*i.e.*, a patent that shares the same priority date, disclosure, and patent term of the parent '665 Patent but contains claims to a different invention). The oral hearing before the EPO on the oppositions occurred on February 14–15, 2019, at which the '420 Patent was revoked in its entirety. Immunex filed a notice of appeal of the EPO's decision on May 31, 2019, and an oral hearing before the TBA has been scheduled for March 2022. The original patent term of the Immunex patents expired in May 2021.

*Proceedings Relating to EYLEA (aflibercept) Injection*

On January 7, 2021, Chengdu Kanghong Pharmaceutical Group Co., Ltd. ("Chengdu Kanghong") filed an IPR petition in the USPTO against the Company' s U.S. Patent No. 10,464,992 (the "'992 Patent") and a post-grant review petition against the Company's U.S. Patent No. 10,828,345 (the "'345 Patent") seeking declarations of invalidity of the '992 Patent and '345 Patent. On June 23, 2021, Chengdu Kanghong filed motions to dismiss each of these petitions and terminate the respective proceedings, which were granted by the USPTO on June 25, 2021.

On February 11, 2020, anonymous parties filed two requests for *ex parte* reexamination of the Company's U.S. Patent No. 10,406,226 and the '992 Patent, and the USPTO has granted both requests to initiate reexamination proceedings.

20

On May 5, 2021, Mylan Pharmaceuticals Inc. filed IPR petitions in the USPTO against the Company's U.S. Patent Nos. 9,254,338 (the "'338 Patent") and 9,669,069 (the "'069 Patent") seeking declarations of invalidity of the '338 Patent and the '069 Patent.

*Proceedings Relating to EYLEA (aflibercept) Injection Pre-filled Syringe*

On June 19, 2020, Novartis Pharma AG, Novartis Pharmaceuticals Corporation, and Novartis Technology LLC (collectively, "Novartis") filed a complaint with the U.S. International Trade Commission (the "ITC") pursuant to Section 337 of the Tariff Act of 1930 requesting that the ITC institute an investigation relating to the importation into the United States and/or sale within the United States after importation of EYLEA pre-filled syringes ("PFS") and/or components thereof which allegedly infringe Novartis's U.S. Patent No. 9,220,631 (the "'631 Patent"). Novartis also requested a permanent limited exclusion order forbidding entry into the United States of EYLEA PFS or components thereof; a permanent cease-and-desist order from the importation, sale, offer for sale, advertising, packaging, or solicitation of any sale by the Company of EYLEA PFS or components thereof; and a bond should the Company continue to import EYLEA PFS (if found to infringe) during, if applicable, any 60-day Presidential review period (*i.e.*, the period when the President of the United States (or his designee) can disapprove any ITC decision to issue an exclusion order or cease-and-desist order). The ITC instituted the investigation on July 22, 2020 and a trial was scheduled for April 19–23, 2021. On March 26, 2021, the staff attorney appointed by the ITC's Office of Unfair Import Investigations ("OUII")—an independent government party to the case representing the public interest—determined that the '631 Patent is invalid on several grounds. On April 8, 2021, Novartis moved to terminate the ITC investigation in its entirety based on its withdrawal of the complaint; and, on May 3, 2021, the ITC terminated the investigation.

On June 19, 2020, Novartis also filed a patent infringement lawsuit in the U.S. District Court for the Northern District of New York asserting claims of the '631 Patent and seeking preliminary and permanent injunctions to prevent the Company from continuing to infringe the '631 Patent. Novartis also seeks a judgment of patent infringement of the '631 Patent, monetary damages (together with interest), an order of willful infringement of the '631 Patent (which would allow the court in its discretion to award damages up to three times the amount assessed), costs and expenses of the lawsuits, and attorneys' fees. On July 30, 2020, the court granted the Company's motion to stay these proceedings until a determination in the ITC proceedings discussed above, including any appeals therefrom, becomes final. On April 8, 2021, Novartis requested that the stay of this lawsuit be lifted. On June 11, 2021, the court lifted the stay; and, on July 11, 2021, the Company filed a motion to dismiss the claim of willful infringement.

On July 16, 2020, the Company initiated two IPR petitions in the USPTO seeking a declaration of invalidity of the '631 Patent on two separate grounds. On January 15, 2021, the USPTO declined to institute an IPR proceeding on procedural grounds in light of the pending ITC investigation discussed above; the other IPR petition has been withdrawn. Following Novartis's motion to terminate the ITC investigation discussed above, on April 16, 2021 the Company filed a new IPR petition seeking a declaration of invalidity of the '631 Patent based on the same grounds that were the basis for the OUII staff attorney's determination discussed above.

On July 17, 2020, the Company filed an antitrust lawsuit against Novartis and Vetter Pharma International Gmbh ("Vetter") in the United States District Court for the Southern District of New York seeking a declaration that the '631 Patent is unenforceable and a judgment that the defendants' conduct violates Sections 1 and 2 of the Sherman Antitrust Act of 1890, as amended (the "Sherman Antitrust Act"). The Company is also seeking injunctive relief and treble damages. On September 4, 2020, Novartis filed, and Vetter moved to join, a motion to dismiss the complaint, to transfer the lawsuit to the Northern District of New York, or to stay the suit; and on October 19, 2020, Novartis filed, and Vetter moved to join, a second motion to dismiss the complaint on different grounds. On January 25, 2021, the Company filed an amended complaint seeking a judgment that Novartis's conduct violates Section 2 of the Sherman Antitrust Act based on additional grounds, as well as a judgment of tortious interference with contract. On February 22, 2021, Novartis filed, and Vetter moved to join, a motion to dismiss the amended complaint.

*Proceedings Related to "Most Favored Nation" Interim Final Rule*

On December 11, 2020, the Company filed a lawsuit in the United States District Court for the Southern District of New York against the U.S. Department of Health and Human Services, the Secretary of HHS, the Centers for Medicare & Medicaid Services ("CMS"), and the Administrator of CMS seeking declaratory and injunctive relief related to the interim final rule with comment period entitled "Most Favored Nation (MFN) Model" issued on November 20, 2020 by HHS, acting through CMS. On the same day, the Company filed a motion for a preliminary injunction and temporary restraining order, seeking to prevent implementation of the MFN Rule. On December 22, 2020, the court heard oral argument on the Company's motion for a preliminary injunction and temporary restraining order. On December 31, 2020, the court granted the Company's motion and issued a preliminary injunction. On February 2, 2021, the government stated to the court that the Solicitor General had

21

determined not to appeal the preliminary injunction. On February 10, 2021, the court entered a 90-day stay of the litigation. On May 11, 2021, the court entered an additional 90-day stay of the litigation.

*Proceedings Relating to fasinumab*

On May 21, 2020, the Company and Teva Pharmaceutical Industries Limited ("Teva") filed a lawsuit against Rinat Neurosciences Corp. ("Rinat"), a wholly owned subsidiary of Pfizer Inc., in the English High Court of Justice in London, seeking invalidation and revocation of Rinat's European Patent No. 2,270,048 (the "'048 Patent"), European Patent No. 1,871,416 (the "'416 Patent"), and European Patent No. 2,305,711 (the "'711 Patent"), each of which pertains to the use of NGF monoclonal antibodies to treat certain symptoms in patients suffering from osteoarthritis. On July 21, 2020, Rinat filed its defense and counterclaim seeking a declaration of infringement of the '048 Patent by fasinumab. The counterclaim also seeks a permanent injunction, damages, an accounting of profits, and costs and interest. On December 15, 2020, Rinat filed an amended defense and counterclaim seeking a declaration of infringement of the '711 Patent by fasinumab. On May 5, 2021, the court stayed this litigation on terms mutually agreed by the parties.

The '048 Patent is subject to opposition proceedings in the EPO, which were initiated by the Company on August 10, 2016 and two other opponents on August 11, 2016. On January 3, 2018, the Opposition Division of the EPO issued a preliminary, non-binding opinion regarding the validity of the '048 Patent, indicating that it considered the granted patent to be invalid. An oral hearing on the oppositions against the '048 Patent was held on November 29–30, 2018, at which the Opposition Division upheld the validity of the '048 Patent's claims in amended form. The Company filed a notice of appeal to the TBA of the EPO on March 7, 2019. On October 21, 2020, Teva filed a notice of intervention with the TBA to take part in the appeal proceedings as an intervener. An oral hearing before the TBA has been scheduled for April 5–6, 2022.

The '711 Patent is also subject to opposition proceedings in the EPO, which were initiated by the Company on May 1, 2018. On January 31, 2019, the Opposition Division of the EPO issued a preliminary, non-binding opinion regarding the validity of the '711 Patent, indicating that it considered the granted patent to be invalid. An oral hearing on the opposition against the '711 Patent was held on December 3, 2019, at which the Opposition Division upheld the validity of the '711 Patent's claims in amended form. The Company filed a notice of appeal to the TBA on December 20, 2019. On January 29, 2021, Teva filed a notice of intervention with the TBA to take part in the appeal proceedings as an intervener. An oral hearing before the TBA was held on July 29, 2021, at which the '711 Patent was revoked in its entirety.

*Proceedings Relating to REGEN-COV (casirivimab and imdevimab)*

On October 5, 2020, Allele Biotechnology and Pharmaceuticals, Inc. ("Allele") filed a lawsuit against the Company in the United States District Court for the Southern District of New York, asserting infringement of U.S. Patent No. 10,221,221 (the "'221 Patent"). Allele seeks a judgment of patent infringement of the '221 Patent, an award of monetary damages (together with interest), an order of willful infringement of the '221 Patent (which would allow the court in its discretion to award damages up to three times the amount assessed), costs and expenses of the lawsuit, and attorneys' fees. On July 16, 2021, the Company filed a motion to dismiss the complaint.

*Department of Justice Matters*

In January 2017, the Company received a subpoena from the U.S. Attorney's Office for the District of Massachusetts requesting documents relating to its support of 501(c)(3) organizations that provide financial assistance to patients; documents concerning its provision of financial assistance to patients with respect to products sold or developed by Regeneron (including EYLEA, Praluent, ARCALYST, and ZALTRAP®); and certain other related documents and communications. On June 24, 2020, the U.S. Attorney's Office for the District of Massachusetts filed a civil complaint in the U.S. District Court for the District of Massachusetts alleging violations of the federal Anti-Kickback Statute, and asserting causes of action under the federal False Claims Act and state law. On August 24, 2020, the Company filed a motion to dismiss the complaint in its entirety. On December 4, 2020, the court denied the motion to dismiss.

In September 2019, the Company and Regeneron Healthcare Solutions, Inc., a wholly-owned subsidiary of the Company, each received a civil investigative demand ("CID") from the U.S. Department of Justice pursuant to the federal False Claims Act relating to remuneration paid to physicians in the form of consulting fees, advisory boards, speaker fees, and payment or reimbursement for travel and entertainment allegedly in violation of the federal Anti-Kickback Statute. The CIDs relate to EYLEA, Praluent, Dupixent, ZALTRAP, ARCALYST, and Kevzara and cover the period from January 2015 to the present. On June 3, 2021, the United States District Court for the Central District of California unsealed a *qui tam* complaint filed against the Company, Regeneron Healthcare Solutions, Inc., and Sanofi-Aventis U.S. LLC by two *qui tam* plaintiffs (known as relators) purportedly on behalf the United States and various states (the "State Plaintiffs"), asserting causes of action under the federal False Claims Act and state law. Also on June 3, 2021, the United States and the State Plaintiffs notified the court of their decision to decline to intervene in the case.

22

In June 2021, the Company received a CID from the U.S. Department of Justice pursuant to the federal False Claims Act. The CID states that the investigation concerns allegations that the Company (i) violated the False Claims Act by paying kickbacks to distributors and ophthalmology practices to induce purchase of EYLEA, including through discounts, rebates, credit card fees, free units of EYLEA, and inventory management systems; and (ii) inflated reimbursement rates for EYLEA by excluding applicable discounts, rebates, and benefits from the average sales price reported to CMS. The CID covers the period from January 2011 through June 2021. The Company is cooperating with this investigation.

*Proceedings Initiated by UnitedHealthcare*

On December 17, 2020, UnitedHealthcare Insurance Company and United Healthcare Services, Inc. (collectively, "UHC") filed a lawsuit against the Company in the United States District Court for the Southern District of New York alleging UHC has been damaged by the conduct alleged in the civil complaint filed by the U.S. Attorney's Office for the District of Massachusetts discussed under "Department of Justice Matters" above. UHC alleges causes of action under state law and the federal Racketeer Influenced and Corrupt Organizations Act (the "RICO Act") and seeks monetary damages and equitable relief. On March 1, 2021, the Company filed a motion to dismiss the complaint in its entirety. On March 25, 2021, UHC filed an amended complaint; and, on April 22, 2021, the Company filed a motion to dismiss this amended complaint in its entirety.

*Proceedings Initiated by Humana*

On July 22, 2021, Humana Inc. ("Humana") filed a lawsuit against the Company in the United States District Court for the Southern District of New York alleging Humana has been damaged by the conduct alleged in the civil complaint filed by the U.S. Attorney's Office for the District of Massachusetts discussed under "Department of Justice Matters" above. Humana alleges causes of action under state law and the RICO Act and seeks monetary damages and equitable relief.

*Shareholder Demand*

On or about September 30, 2020, the Company's board of directors received a demand letter from a purported shareholder of the Company. The demand alleges that Regeneron and its shareholders have been damaged by the conduct alleged in the civil complaint filed by the U.S. Attorney's Office for the District of Massachusetts discussed under "Department of Justice Matters" above. The demand letter requests that the Company's board of directors investigate alleged breaches of fiduciary duty by its officers and directors and other alleged violations of law and corporate governance practices and procedures; bring legal action against the persons responsible for causing the alleged damages; and implement and maintain an effective system of internal controls, compliance mechanisms, and corporate governance practices and procedures. The Company's board of directors, working with outside counsel, investigated and evaluated the allegations in the demand letter and has concluded that pursuing the claims alleged in the demand would not be in the Company's best interests at this time.

*Proceedings Relating to Shareholder Derivative Complaint*

On June 29, 2021, an alleged shareholder filed a shareholder derivative complaint in the New York Supreme Court, naming the current and certain former members of the Company's board of directors and certain current and former executive officers of the Company as defendants and Regeneron as a nominal defendant. The complaint asserts that the individual defendants breached their fiduciary duties in relation to the allegations in the civil complaint filed by the U.S. Attorney's Office for the District of Massachusetts discussed under "Department of Justice Matters" above. The complaint seeks an award of damages allegedly sustained by the Company; an order requiring Regeneron to take all necessary actions to reform and improve its corporate governance and internal procedures; disgorgement from the individual defendants of all profits and benefits obtained by them resulting from their sales of Regeneron stock; and costs and disbursements of the action, including attorneys' fees. On July 28, 2021, the defendants filed a notice of removal, removing the case from the New York Supreme Court to the U.S. District Court for the Southern District of New York.

Table of Contents

**SIGNATURE**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

REGENERON PHARMACEUTICALS, INC.

Date:    August 5, 2021                By:    /s/ Robert E. Landry

Robert E. Landry
Executive Vice President, Finance and
Chief Financial Officer
(Duly Authorized Officer)

86