# Exhibit 10

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**
**FORM 10-K**

(Mark One)

☒  **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

    **For the fiscal year ended December 31, 2023**

        **OR**

☐  **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

    **For the transition period from _____ to _____**

**Commission File Number: 000-19034**

# REGENERON PHARMACEUTICALS, INC.

*(Exact name of registrant as specified in its charter)*

| **New York** | **13-3444607** |
|---|---|
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |

**777 Old Saw Mill River Road Tarrytown, New York 10591-6707**
*(Address of principal executive offices, including zip code)*

**(914) 847-7000**
*(Registrant's telephone number, including area code)*

**Securities registered pursuant to Section 12(b) of the Act:**

| *Title of each class* | *Trading Symbol* | *Name of each exchange on which registered* |
|---|---|---|
| **Common Stock - par value $.001 per share** | **REGN** | **NASDAQ Global Select Market** |

**Securities registered pursuant to section 12(g) of the Act: None**

| | | |
|---|---|---|
| Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. | Yes ☒ | No ☐ |
| Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. | Yes ☐ | No ☒ |
| Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. | Yes ☒ | No ☐ |
| Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). | Yes ☒ | No ☐ |

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

  Large accelerated filer ☒     Accelerated filer ☐     Non-accelerated filer ☐     Smaller reporting company ☐     Emerging growth company ☐

| | |
|---|---|
| If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. | ☐ |
| Indicate by check mark whether the registrant has filed a report on and attestation to its management's assessment of the effectiveness of its internal control over financial reporting under Section 404(b) of the Sarbanes-Oxley Act (15 U.S.C. 7262(b)) by the registered public accounting firm that prepared or issued its audit report. | ☒ |
| If securities are registered pursuant to Section 12(b) of the Act, indicate by check mark whether the financial statements of the registrant included in the filing reflect the correction of an error to previously issued financial statements. | ☐ |
| Indicate by check mark whether any of those error corrections are restatements that required a recovery analysis of incentive-based compensation received by any of the registrant's executive officers during the relevant recovery period pursuant to §240.10D-1(b). | ☐ |

| | | |
|---|---|---|
| Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). | Yes ☐ | No ☒ |

The aggregate market value of the voting and non-voting common stock held by non-affiliates of the registrant was $76.7 billion, computed by reference to the closing sales price of the stock on NASDAQ on June 30, 2023, the last trading day of the registrant's most recently completed second fiscal quarter. For purposes of this calculation only, the registrant has assumed that all of its directors and executive officers, and no other persons, are its affiliates. This determination of affiliate status is not necessarily a determination for other purposes.

The number of shares outstanding of each of the registrant's classes of common stock as of January 25, 2024:

| Class of Common Stock | Number of Shares |
|---|---|
| Class A Stock, $.001 par value | 1,818,146 |
| Common Stock, $.001 par value | 107,943,750 |

**DOCUMENTS INCORPORATED BY REFERENCE**

Specified portions of the Registrant's definitive proxy statement to be filed in connection with solicitation of proxies for its 2024 Annual Meeting of Shareholders are incorporated by reference into Part III of this Form 10-K. Exhibit index is located on pages 92 to 96 of this filing.

**REGENERON PHARMACEUTICALS, INC.**
**ANNUAL REPORT ON FORM 10-K**
**TABLE OF CONTENTS**

|  |  | **Page Numbers** |
|---|---|---|
| **PART I** |  |  |
| Item 1. | Business | 2 |
| Item 1A. | Risk Factors | 38 |
| Item 1B. | Unresolved Staff Comments | 70 |
| Item 1C. | Cybersecurity | 70 |
| Item 2. | Properties | 71 |
| Item 3. | Legal Proceedings | 71 |
| Item 4. | Mine Safety Disclosures | 71 |
|  |  |  |
| **PART II** |  |  |
| Item 5. | Market for Registrant's Common Equity, Related Stockholder Matters, and Issuer Purchases of Equity Securities | 72 |
| Item 6. | [Reserved] | 73 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 73 |
| Item 7A. | Quantitative and Qualitative Disclosures About Market Risk | 89 |
| Item 8. | Financial Statements and Supplementary Data | 90 |
| Item 9. | Changes in and Disagreements with Accountants on Accounting and Financial Disclosure | 90 |
| Item 9A. | Controls and Procedures | 90 |
| Item 9B. | Other Information | 91 |
| Item 9C. | Disclosure Regarding Foreign Jurisdictions that Prevent Inspections | 91 |
|  |  |  |
| **PART III** |  |  |
| Item 10. | Directors, Executive Officers and Corporate Governance | 91 |
| Item 11. | Executive Compensation | 91 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 91 |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence | 91 |
| Item 14. | Principal Accountant Fees and Services | 91 |
|  |  |  |
| **PART IV** |  |  |
| Item 15. | Exhibits and Financial Statement Schedules | 92 |
| Item 16. | Form 10-K Summary | 96 |
|  |  |  |
| **SIGNATURE PAGE** |  | 97 |

"Altibodies™," "ARCALYST®," "Evkeeza®," "EYLEA®," "EYLEA® HD," "Inmazeb®," "Libtayo®," "Praluent®" (in the United States), "REGEN-COV®," "Regeneron®," "Regeneron Genetics Center®," "RGC®," "*Veloci-Bi®*," "*VelociGene®*," "*VelociHum®*," "*VelociMab®*," "*VelocImmune®*," "*VelociMouse®*," "*VelociSuite®*," "*VelociT®*," "Veopoz™," and "ZALTRAP®" are trademarks of Regeneron Pharmaceuticals, Inc. Trademarks and trade names of other companies appearing in this report are, to the knowledge of Regeneron Pharmaceuticals, Inc., the property of their respective owners. This report refers to products of Regeneron Pharmaceuticals, Inc., its collaborators, and other parties. Consult the product label in each territory for specific information about such products.

Table of Contents

**PART II**

**Item 5. Market for Registrant's Common Equity, Related Stockholder Matters, and Issuer Purchases of Equity Securities**

*Market for Registrant's Common Equity*

Our Common Stock, par value $.001 per share, is quoted on The NASDAQ Global Select Market under the symbol "REGN." Our Class A Stock, par value $.001 per share, is not publicly quoted or traded.

As of January 25, 2024, there were 153 shareholders of record of our Common Stock and 14 shareholders of record of our Class A Stock.

We have never paid cash dividends on our Common Stock or Class A Stock and do not currently have plans to do so.

**STOCK PERFORMANCE GRAPH**

Set forth below is a line graph comparing the cumulative total shareholder return on Regeneron's Common Stock with the cumulative total return of (i) the NASDAQ US Benchmark Pharmaceuticals Total Return Index ("NQ US Pharma TR Index"), and (ii) Standard & Poor's 500 Stock Index ("S&P 500") for the period from December 31, 2018 through December 31, 2023. The comparison assumes that $100 was invested on December 31, 2018 in our Common Stock and in both of the foregoing indices. All values assume reinvestment of the pre-tax value of dividends paid by companies included in these indices. The historical stock price performance of our Common Stock shown in the graph below is not necessarily indicative of future stock price performance.



|  | 12/31/2018 | 12/31/2019 | 12/31/2020 | 12/31/2021 | 12/31/2022 | 12/31/2023 |
|---|---|---|---|---|---|---|
| Regeneron | $ 100.00 | $ 100.53 | $ 129.35 | $ 169.08 | $ 193.17 | $ 235.15 |
| S&P 500 | $ 100.00 | $ 128.88 | $ 149.83 | $ 190.13 | $ 153.16 | $ 190.27 |
| NQ US Pharma TR Index | $ 100.00 | $ 114.51 | $ 126.56 | $ 157.42 | $ 175.29 | $ 182.08 |

This performance graph shall not be deemed "filed" for purposes of Section 18 of the Securities Exchange Act of 1934, as amended, or incorporated by reference into any filing of ours under the Securities Act of 1933, as amended, or the Securities Exchange Act, except as shall be expressly set forth by specific reference to such filing.

Table of Contents

*Issuer Purchases of Equity Securities*

The table below reflects shares of Common Stock we repurchased under our share repurchase programs, as well as Common Stock withheld by us for employees to satisfy their tax withholding obligations arising upon the vesting of restricted stock granted under one of our long-term incentive plans, during the three months ended December 31, 2023. Refer to Part II, Item 7. "Management's Discussion and Analysis of Financial Condition and Results of Operations - Liquidity and Capital Resources" for further details of our share repurchase programs.

| Period | Total Number of Shares Purchased | | Average Price Paid per Share | Total Number of Shares Purchased as Part of Publicly Announced Programs | | Approximate Dollar Value of Shares that May Yet Be Purchased Under the Programs *(In millions)* |
|---|---|---|---|---|---|---|
| 11/1/2023-11/30/2023 | 272,952 | $ | 802.55 | 269,976 | $ | 1,609.1 |
| 12/1/2023-12/31/2023 | 558,642 | $ | 849.22 | 93,108 | $ | 1,530.6 |
| Total | 831,594 [a] | | | 363,084 [a] | | |

[a] The difference between the total number of shares purchased and the total number of shares purchased as part of publicly announced programs relates to Common Stock withheld by us for employees to satisfy their tax withholding obligations arising upon the vesting of restricted stock granted under one of our long-term incentive plans.

### Item 6. [Reserved]

### Item 7. Management's Discussion and Analysis of Financial Condition and Results and Results of Operations

*The following discussion should be read in conjunction with the consolidated financial statements and related notes included elsewhere in this report. Refer to Part II, Item 7 in our Annual Report on Form 10-K for the fiscal year ended December 31, 2022 (filed with the SEC on February 6, 2023) for additional discussion of our financial condition and results of operations for the year ended December 31, 2021, as well as our financial condition and results of operations for the year ended December 31, 2022 compared to the year ended December 31, 2021.*

### Overview

Regeneron Pharmaceuticals, Inc. is a fully integrated biotechnology company that invents, develops, manufactures, and commercializes medicines for people with serious diseases. Our research and development efforts have led to eleven FDA-approved products that have received marketing approval and approximately 35 product candidates in clinical development, almost all of which were homegrown in our laboratories.

Our ability to generate profits and to generate positive cash flow from operations over the next several years depends significantly on the continued success in commercializing EYLEA and Dupixent, as well as whether we are successful in commercializing EYLEA HD. We expect to continue to incur substantial expenses related to our research and development activities, a portion of which we expect to be reimbursed by our collaborators. In addition, our research and development activities and related costs which are not reimbursed are expected to expand and require additional resources. We also expect to incur substantial costs related to the commercialization of our marketed products. Our financial results may fluctuate from quarter to quarter and will depend on, among other factors, the net sales of our products; the scope and progress of our research and development efforts; the timing of certain expenses; the continuation of our collaborations, in particular with Sanofi and Bayer, including our share of collaboration profits from sales of commercialized products and the amount of reimbursement of our research and development expenses that we receive from collaborators; and the amount of income tax expense we incur, which is partly dependent on the profits or losses we earn in each of the countries in which we operate. We cannot predict whether or when new products or new indications for marketed products will receive regulatory approval or, if any such approval is received, whether we will be able to successfully commercialize such product(s) and whether or when they may become profitable.

Table of Contents

*Revenues*

| (In millions) | Year Ended December 31, | | | $ Change | |
|---|---|---|---|---|---|
| | **2023** | **2022** | **2021** | **2023 vs. 2022** | **2022 vs. 2021** |
| Net product sales: | | | | | |
| EYLEA HD - U.S. | $ 165.8 | $ - | $ - | $ 165.8 | $ - |
| EYLEA - U.S. | 5,719.6 | 6,264.6 | 5,792.3 | (545.0) | 472.3 |
| Total EYLEA HD and EYLEA - U.S. | 5,885.4 | 6,264.6 | 5,792.3 | (379.2) | 472.3 |
| Libtayo - U.S. | 538.8 | 374.5 | 306.3 | 164.3 | 68.2 |
| Libtayo - ROW* | 324.3 | 73.0 | - | 251.3 | 73.0 |
| Total Libtayo - Global | 863.1 | 447.5 | 306.3 | 415.6 | 141.2 |
| Praluent - U.S. | 182.4 | 130.0 | 170.0 | 52.4 | (40.0) |
| REGEN-COV - U.S. | - | - | 5,828.0 | - | (5,828.0) |
| Evkeeza - U.S. | 77.3 | 48.6 | 18.4 | 28.7 | 30.2 |
| Inmazeb - U.S. | 69.8 | 3.0 | - | 66.8 | 3.0 |
| ARCALYST - U.S.** | - | - | 2.2 | - | (2.2) |
| Total net product sales | $ 7,078.0 | $ 6,893.7 | $ 12,117.2 | $ 184.3 | $ (5,223.5) |
| Collaboration revenue: | | | | | |
| Sanofi | $ 3,799.5 | $ 2,855.7 | $ 1,902.2 | $ 943.8 | $ 953.5 |
| Bayer | 1,487.5 | 1,430.7 | 1,409.3 | 56.8 | 21.4 |
| Roche | 211.0 | 627.3 | 361.8 | (416.3) | 265.5 |
| Other | 5.1 | 0.4 | - | 4.7 | 0.4 |
| Other revenue | 536.1 | 365.1 | 281.2 | 171.0 | 83.9 |
| Total revenues | $ 13,117.2 | $ 12,172.9 | $ 16,071.7 | $ 944.3 | $ (3,898.8) |

\* Effective July 1, 2022, the Company became solely responsible for the research, development, and commercialization of Libtayo worldwide and began recording net product sales of Libtayo outside the United States.

\*\* Effective April 1, 2021, Kiniksa records net product sales of ARCALYST in the United States. Previously, the Company recorded net product sales of ARCALYST in the United States.

*Net Product Sales*

Net product sales of EYLEA in the United States decreased in 2023, compared to 2022, primarily due to changing market dynamics, resulting in a lower net selling price and lower volumes. EYLEA volumes in 2023 were impacted by the August 2023 launch of EYLEA HD and subsequent transition of EYLEA patients to EYLEA HD.

During the year ended December 31, 2021, we recorded net product sales of REGEN-COV in connection with our agreements with the U.S. government. As of December 31, 2021, the Company had completed its final deliveries of drug product under its agreements with the U.S. government; as a result, there were no net product sales of REGEN-COV in the United States recorded during the years ended December 31, 2023 and 2022.

Table of Contents

**<u>SIGNATURES</u>**

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

<u>REGENERON PHARMACEUTICALS, INC.</u>

| | | | |
|---|---|---|---|
| Date: | February 5, 2024 | By: | <u>/s/ LEONARD S. SCHLEIFER</u> |
| | | | Leonard S. Schleifer, M.D., Ph.D. |
| | | | President and Chief Executive Officer |

97

Table of Contents

Table of Contents

**16. Legal Matters**

From time to time, the Company is a party to legal proceedings in the course of the Company's business. The outcome of any such proceedings, regardless of the merits, is inherently uncertain. If the Company were unable to prevail in any such proceedings, its consolidated financial position, results of operations, and future cash flows may be materially impacted. Costs associated with the Company's involvement in legal proceedings are expensed as incurred. The Company recognizes accruals for loss contingencies associated with such proceedings when it is probable that a liability will be incurred and the amount of loss can be reasonably estimated. As of December 31, 2023 and 2022, the Company's accruals for loss contingencies were not material. There are certain loss contingencies that the Company deems reasonably possible for which the possible loss or range of possible loss is not estimable at this time.

*Proceedings Relating to Praluent (alirocumab) Injection*

As described below, the Company is currently a party to patent infringement actions initiated by Amgen Inc. (and/or its affiliated entities) against the Company and/or Sanofi (and/or the Company's and Sanofi's respective affiliated entities) in a number of jurisdictions relating to Praluent. In addition, as described below, the Company filed a lawsuit against Amgen alleging that Amgen engaged in an anticompetitive bundling scheme which was designed to exclude Praluent from the market in violation of U.S. federal and state laws.

United States

In the United States, Amgen asserted claims of U.S. Patent Nos. 8,829,165 (the "'165 Patent") and 8,859,741 (the "'741 Patent"), and sought a permanent injunction to prevent the Company and the Sanofi defendants from commercial manufacturing, using, offering to sell, or selling within the United States (as well as importing into the United States) Praluent. Amgen also sought a judgment of patent infringement of the asserted patents, monetary damages (together with interest), costs and expenses of the lawsuits, and attorneys' fees. As previously reported, on February 11, 2021, the United States Court of Appeals for the Federal Circuit (the "Federal Circuit") affirmed the lower court's decision that certain of Amgen's asserted patent claims are invalid based on lack of enablement. On April 14, 2021, Amgen filed a petition for a rehearing en banc with the Federal Circuit, which was denied on June 21, 2021. On November 4, 2022, the United States Supreme Court granted Amgen's petition for writ of certiorari. An oral hearing was held on March 27, 2023. On May 28, 2023, the United States Supreme Court affirmed the Federal Circuit's decision that certain of Amgen's asserted patent claims are invalid based on lack of enablement.

On May 27, 2022, the Company filed a lawsuit against Amgen in the United States District Court for the District of Delaware, alleging that, beginning in 2020, Amgen engaged in an anticompetitive bundling scheme which was designed to exclude Praluent from the market in violation of federal and state laws. The lawsuit seeks damages for harm caused by the alleged scheme, as well as injunctive relief restraining Amgen from continuing its alleged anticompetitive conduct. On August 1, 2022, Amgen filed a motion to dismiss the complaint. On August 11, 2022, Amgen filed a motion to stay these proceedings pending resolution of the patent litigation described in the preceding paragraph. An oral hearing on Amgen's motion to dismiss and motion to stay was held on January 6, 2023. On February 10, 2023, the court denied Amgen's motion to stay; and on March 21, 2023, the court denied Amgen's motion to dismiss. On August 28, 2023, the Company filed an amended complaint in this matter; and, as part of its response, on September 20, 2023, Amgen filed a counterclaim alleging that the Company engaged in unfair business practices in violation of state law. A trial has been scheduled to begin in November 2024.

F-38

Table of Contents

Europe

Amgen has asserted European Patent No. 2,215,124 (the "'124 Patent"), which pertains to PCSK9 monoclonal antibodies, in certain countries in Europe. In October 2020, the '124 Patent claims directed to compositions of matter and medical use relevant to Praluent were ruled invalid based on a lack of inventive step by the Technical Board of Appeal (the "TBA") of the European Patent Office (the "EPO"). Following the EPO's decision, each of the '124 Patent infringement proceedings initiated by Amgen against the Company and certain of Sanofi's affiliated entities in these countries was dismissed, including in Germany. The dismissal in Germany followed an earlier finding of infringement and granting of an injunction, both of which were subsequently overturned. As a result of the overturned injunction in Germany, the Company and/or certain of Sanofi's affiliated entities are seeking damages caused by Amgen's enforcement of the injunction. An oral hearing has been scheduled for February 28, 2024. As part of its opposition to these damages claims, on March 23, 2022, Amgen filed a counterclaim that asserted the German designation of European Patent No. 2,641,917 (the "'917 Patent") and seeks, among other things, a judgment of patent infringement, injunctive relief, and monetary damages. The '917 Patent is a divisional patent of the '124 Patent discussed above (i.e., a patent that shares the same priority date, disclosure, and patent term of the parent '124 Patent but contains claims to a different invention). An oral hearing before the Munich Regional Court was held on November 29, 2023, at which Amgen's counterclaim was dismissed. The '917 Patent is also subject to opposition proceedings in the EPO, which were initiated by Sanofi on May 5, 2021. An oral hearing before the EPO was held on February 21, 2023, at which the '917 Patent was revoked. Amgen filed a notice to appeal to the TBA of the EPO on February 27, 2023.

On June 1, 2023, Amgen filed a lawsuit against the Company and certain of Sanofi's affiliated entities in the Munich Local Division of the Unified Patent Court (the "UPC") alleging infringement of Amgen's European Patent No. 3,666,797 (the "'797 Patent"). The lawsuit seeks, among other things, a permanent injunction in several countries in Europe and monetary damages. The '797 Patent is a divisional patent of the '124 Patent discussed above. A trial has been scheduled for October 16-17, 2024. Also on June 1, 2023, Sanofi filed an action in the Munich Central Division of the UPC seeking revocation of the '797 Patent. A trial has been scheduled for June 4-5, 2024.

*Proceedings Relating to EYLEA (aflibercept) Injection*

Certain of the Company's patents pertaining to EYLEA are subject to post-grant proceedings before the United States Patent and Trademark Office ("USPTO"), EPO, or other comparable foreign authorities, including those described in greater detail below. In addition, the Company has filed patent infringement lawsuits in several jurisdictions alleging infringement of certain Company patents pertaining to EYLEA, including those described in greater detail below.

United States

*Post-Grant Proceedings Before USPTO*

| Company Patent(s) | Challenger(s) | Type of Challenge | Date of Challenge | Latest Events/Current Status |
|---|---|---|---|---|
| U.S. Patent Nos. 10,406,226 (the "'226 Patent") and 10,464,992 (the "'992 Patent") | Anonymous parties | *Ex parte* reexamination | February 11, 2020 | On September 11, 2023, the USPTO dismissed the '226 Patent reexamination proceedings following the Company's filing of a Notice of Disclaimer, disclaiming all claims of the '226 Patent. On September 8, 2023, the '992 Patent reexamination proceedings were stayed by the USPTO pending resolution of the *inter partes* review ("IPR") of the '992 Patent initiated by Celltrion, Inc., as discussed further below. On January 17, 2024, the Company filed a Notice of Disclaimer with the USPTO, disclaiming all claims of the '992 Patent. |

F-39

Table of Contents

| Company Patent(s) *(continued)* | Challenger(s) | Type of Challenge | Date of Challenge | Latest Events/Current Status |
|---|---|---|---|---|
| U.S. Patent Nos. 9,254,338 (the "'338 Patent") and 9,669,069 (the "'069 Patent") | Mylan Pharmaceuticals Inc., joined by Apotex Inc. and Celltrion | IPR petitions seeking declarations of invalidity | May 5, 2021 | On November 9, 2022, the USPTO issued final written decisions finding that the challenged claims of the '338 and '069 Patents are unpatentable and, therefore, invalid.<br><br>On January 10, 2023, the Company filed notices of appeal of the USPTO written decisions concerning the '338 and '069 Patents with the Federal Circuit. |
| U.S. Patent Nos. 10,130,681 (the "'681 Patent"), 10,888,601 (the "'601 Patent"), and 10,857,205 (the "'205 Patent") | Mylan, joined by Celltrion ('601 and '681 Patents) and Samsung Bioepis Co., Ltd. ('601 Patent) | IPR petitions seeking declarations of invalidity | July 1, 2022 ('681 Patent and '601 Patent)<br><br>October 28, 2022 ('205 Patent) | On January 9, 2024, the USPTO issued final written decisions finding that that the challenged claims of the '681 and '601 Patents are unpatentable and, therefore, invalid.<br><br>On March 1, 2023, the USPTO denied institution of Mylan's IPR petition against the '205 Patent following the Company's filing of a Notice of Disclaimer with the USPTO, disclaiming all claims of the '205 Patent. |
| '681 Patent and '601 Patent | Samsung Bioepis, joined by Biocon Biologics Inc. ('601 Patent) | IPR petitions seeking declarations of invalidity | January 6, 2023 ('681 Patent)<br><br>March 26, 2023 ('601 Patent) | On July 19, 2023 and October 20, 2023, the USPTO instituted IPR proceedings concerning the '681 Patent and the '601 Patent, respectively. |
| U.S. Patent No. 11,253,572 (the "'572 Patent") | Apotex<br><br>Samsung Bioepis | IPR petition seeking declaration of invalidity<br><br>IPR petition seeking declaration of invalidity | September 9, 2022<br><br>April 27, 2023 | On March 10, 2023, the USPTO declined to institute an IPR proceeding based on the Apotex IPR petition.<br>On November 17, 2023, the USPTO instituted IPR proceedings concerning the '572 Patent based on the Samsung IPR petition. |
| '992 Patent and '226 Patent | Celltrion, joined by Samsung Bioepis ('992 Patent) | IPR petitions seeking declarations of invalidity | January 17, 2023 ('992 Patent)<br><br>February 28, 2023 ('226 Patent) | On July 20, 2023, the USPTO instituted an IPR proceeding concerning the '992 Patent. On January 17, 2024, the Company filed a Notice of Disclaimer with the USPTO, disclaiming all claims of the '992 Patent.<br><br>On September 1, 2023, the USPTO denied institution of Celltrion's IPR petition against the '226 Patent following the Company's filing of a Notice of Disclaimer with the USPTO, disclaiming all claims of the '226 Patent. |

Table of Contents

*U.S. Patent Litigation*

On August 2, 2022, the Company filed a patent infringement lawsuit against Mylan, a wholly-owned subsidiary of Viatris Inc., in the United States District Court for the Northern District of West Virginia alleging that Mylan's filing for FDA approval of an aflibercept 2 mg biosimilar infringes certain Company patents. On April 20, 2023, Mylan filed a motion for summary judgment or partial summary judgment concerning four of the asserted patents. On April 26, 2023, the Company filed a stipulation accepting summary judgment of noninfringement of all asserted claims of the Company's U.S. Patent No. 11,104,715. On June 5, 2023, Biocon, as successor-in-interest to the aflibercept 2 mg biosimilar, was joined as a defendant to the lawsuit. A trial was held from June 12, 2023 through June 23, 2023 concerning certain claims of the '601 Patent, the '572 Patent, and the Company's U.S. Patent No. 11,084,865 (the "'865 Patent"). Closing arguments were presented on August 3, 2023. On December 27, 2023, the court issued a decision finding that (i) the asserted claims of the '865 Patent were valid and infringed by Mylan and (ii) the asserted claims of the '601 and '572 Patents were infringed by Mylan but were invalid as obvious.

On November 8, November 22, and November 29, 2023, respectively, the Company filed patent infringement lawsuits against Celltrion, Samsung Bioepis, and Formycon AG in the United States District Court for the Northern District of West Virginia following service on Regeneron of each company's notice of commercial marketing. The lawsuits allege that each company has infringed certain Company patents, including based on each company's filing for FDA approval of an aflibercept 2 mg biosimilar. On December 27, 2023, the Company filed a second patent infringement lawsuit against Samsung Bioepis in the United States District Court for the Northern District of West Virginia alleging that Samsung's filing for FDA approval of an aflibercept 2 mg biosimilar infringes certain Company patents. A preliminary injunction hearing concerning each of these lawsuits has been scheduled for May 2, 2024.

On January 10, 2024, the Company filed a patent infringement lawsuit against Amgen in the United States District Court for the Central District of California alleging that Amgen's filing for FDA approval of an aflibercept 2 mg biosimilar infringes certain Company patents. On January 11, 2024, the Company filed a motion with the United States Judicial Panel on Multidistrict Litigation seeking to transfer this lawsuit to the United States District Court for the Northern District of West Virginia for coordinated pretrial proceedings with the lawsuits described in the preceding paragraph. A hearing on the motion to transfer has been scheduled for March 28, 2024.

Europe

*Post-Grant Proceedings*

| Authority/Court | Company Patent(s) | Challenger(s) | Type of Challenge | Date of Challenge | Latest Events/Current Status |
|---|---|---|---|---|---|
| EPO | European Patent No. 2,944,306 (the "'306 Patent") | Anonymous parties | Opposition proceedings | October 26 and October 27, 2021 | Oral hearing to be scheduled. |
| EPO | European Patent No. 3,716,992 (the "EP '992 Patent") | Amgen and three anonymous parties | Opposition proceedings | May 5-10, 2023 | Oral hearing to be scheduled. |
| German Federal Patent Court | German designation of European Patent No. 2,364,691 (the "'691 Patent") | Samsung Bioepis NL B.V. | Invalidation proceedings | June 22, 2023 | Trial has been scheduled to begin in June 2025. |

Canada

On June 15, July 15, August 30, and October 4, 2022, the Company and Bayer Inc. filed patent infringement lawsuits against BGP Pharma ULC d.b.a Viatris Canada ("Viatris Canada") in the Federal Court of Canada seeking a declaration that the making, constructing, using, or selling of an aflibercept 2 mg biosimilar would directly or indirectly infringe one or more claims of the Company's Canadian Patent Nos. 2,654,510 (the "'510 Patent") and 3,007,276 (the "'276 Patent") (in the lawsuit filed on June 15, 2022); the Company's Canadian Patent No. 2,965,495 (the "'495 Patent") (in the lawsuit filed on July 15, 2022); the Company's Canadian Patent No. 2,906,768 (the "'768 Patent") (in the lawsuit filed on August 30, 2022, which has been joined with the lawsuit filed on July 15, 2022); and the Company's Canadian Patent No. 3,129,193 (the "'193 Patent") (in the lawsuit filed on October 4, 2022). A trial for the lawsuit concerning the '510 Patent and the '276 Patent (the "Viatris Canada 510/276 Lawsuit") has been scheduled for March 2024; a trial for the lawsuit concerning the '193 Patent has been scheduled for May 2024; and a trial for the lawsuit concerning the '495 Patent and the '768 Patent has been scheduled for November/December 2024. The filing of the Viatris Canada 510/276 Lawsuit resulted in a statutory 24-month stay of regulatory approval of Viatris Canada's aflibercept 2 mg

Table of Contents

biosimilar in Canada unless the lawsuit is resolved earlier. On March 27, 2023, in light of the transfer of Viatris Canada's New Drug Submission ("NDS") of its aflibercept 2 mg biosimilar to Biosimilar Collaborations Ireland Limited ("BCIL"), the Company filed a motion in the Federal Court of Canada seeking termination of the Viatris Canada 510/276 Lawsuit. On June 5, 2023, BCIL was added as a defendant in the Viatris Canada 510/276 Lawsuit.

On March 23, 2023 and June 14, 2023, the Company and Bayer Inc. filed patent infringement lawsuits against BCIL in the Federal Court of Canada seeking a declaration that the making, constructing, using, or selling of an aflibercept 2 mg biosimilar would directly or indirectly infringe one or more claims of the Company's '510 and '276 Patents. The June 14, 2023 lawsuit was filed after BCIL served Bayer Inc. with a statutory notification in relation to the NDS on May 23, 2023. On September 14, 2023, the Company, Bayer Inc., and Bayer Healthcare LLC filed patent infringement lawsuits against Viatris Canada and BCIL in the Federal Court of Canada seeking a declaration that the making, constructing, using, or selling of an aflibercept 2 mg biosimilar would directly or indirectly infringe one or more claims of Bayer Healthcare LLC's Canadian Patent No. 2,970,315 (the "'315 Patent").

On May 9, 2023, Amgen Canada Inc. ("Amgen Canada") filed invalidation proceedings against the Company in the Federal Court of Canada seeking revocation of the '510 Patent and the '276 Patent. On September 14, 2023, the Company, Bayer Inc., and Bayer Healthcare LLC filed patent infringement lawsuits against Amgen Canada in the Federal Court of Canada seeking a declaration that the making, constructing, using, or selling of an aflibercept 2 mg biosimilar would directly or indirectly infringe one or more claims of the '315 Patent. On September 14, 2023, the Company and Bayer Inc. filed three separate patent infringement lawsuits against Amgen Canada in the Federal Court of Canada seeking a declaration that the making, constructing, using, or selling of an aflibercept 2 mg biosimilar would directly or indirectly infringe one or more claims of the Company's '193 Patent, '495 Patent, and '768 Patent, respectively. On October 11, 2023, the Company, Bayer Inc., and Bayer Healthcare LLC filed two separate patent infringement lawsuits against Amgen Canada in the Federal Court of Canada seeking a declaration that the making, constructing, using, or selling of an aflibercept 2 mg biosimilar would directly or indirectly infringe one or more claims of the Company's '510 Patent and '276 Patent, respectively. A trial for the lawsuits concerning the '510 Patent and the '276 Patent has been scheduled for May 2025.

On January 15, 2024, the Company and Bayer Inc. filed patent infringement lawsuits against Celltrion, Inc., Celltrion Healthcare Co, Ltd., Celltrion Pharma Inc., and Celltrion Healthcare Canada Ltd. in the Federal Court of Canada seeking a declaration that the making, constructing, using, or selling of an aflibercept 2 mg biosimilar would directly or indirectly infringe one or more claims of the '510 Patent, the '276 Patent, the '495 Patent, the '768 Patent, the '193 Patent, and the '315 Patent.

South Korea

On October 31, 2022 and December 13, 2022, Samsung Bioepis Co., Ltd. initiated invalidation proceedings before the Intellectual Property Trial and Appeal Board of the Korean Intellectual Property Office against the Company's Korean Patent Nos. 1131429 and 1406811, respectively, seeking revocation of each of such patents in its entirety.

On January 16, 2023, the Company filed patent infringement lawsuits against Samsung Bioepis Co., Ltd. and its parent company Samsung Biologics Co., Ltd. before the Seoul Central District Court seeking a declaration that the making, constructing, using, or selling of an aflibercept 2 mg biosimilar would infringe one or more claims of the Company's Korean Patent No. 659477 (the "'477 Patent"). On July 20, 2023, the Company filed a preliminary injunction petition against Samsung Bioepis Co., Ltd. and its parent company Samsung Biologics Co., Ltd. before the Seoul Central District Court seeking a court order enjoining the manufacture, use, and assignment of an aflibercept 2 mg biosimilar that infringes one or more claims of the '477 Patent; and on December 20, 2023, the Seoul Central District Court granted a preliminary injunction. On January 10, 2024, the injunction was lifted against the Samsung entities following the expiration of the '477 Patent.

On March 2, 2023, the Company filed an affirmative scope confirmation action against Samsung Bioepis Co., Ltd. before the Intellectual Property Tribunal and Appeal Board of the Korean Intellectual Property Office seeking a ruling that Samsung Bioepis's aflibercept 2 mg biosimilar is covered by the claims of the '477 Patent. On March 7, 2023, the action was designated for expedited proceedings.

*Proceedings Relating to EYLEA (aflibercept) Injection Pre-filled Syringe*

On June 19, 2020, Novartis Pharma AG, Novartis Pharmaceuticals Corporation, and Novartis Technology LLC (collectively, "Novartis") filed a patent infringement lawsuit (as amended on August 2, 2021) in the U.S. District Court for the Northern District of New York asserting claims of Novartis's U.S. Patent No. 9,220,631 (the "'631 Patent") and seeking preliminary and permanent injunctions to prevent the Company from continuing to infringe the '631 Patent. Novartis also seeks a judgment of patent infringement of the '631 Patent, monetary damages (together with interest), an order of willful infringement of the '631 Patent (which would allow the court in its discretion to award damages up to three times the amount assessed), costs and expenses of the

F-42

Table of Contents

lawsuits, and attorneys' fees. On November 7, 2022, the Company and Novartis entered into a stipulation staying the lawsuit in light of the decision in the IPR proceeding discussed below.

On July 16, 2020, the Company initiated two IPR petitions in the USPTO seeking a declaration of invalidity of the '631 Patent on two separate grounds. On October 26, 2021, the USPTO issued a decision instituting the IPR proceeding. An oral hearing was held on July 21, 2022. On October 25, 2022, the Patent Trial and Appeal Board ("PTAB") of the USPTO issued a final written decision invalidating all claims of the '631 Patent. On December 23, 2022, Novartis filed a notice of appeal of the PTAB's decision to the Federal Circuit.

On July 17, 2020, the Company filed an antitrust lawsuit against Novartis and Vetter Pharma International Gmbh ("Vetter") in the United States District Court for the Southern District of New York seeking a declaration that the '631 Patent is unenforceable and a judgment that the defendants' conduct violates Sections 1 and 2 of the Sherman Antitrust Act of 1890, as amended (the "Sherman Antitrust Act"). The Company is also seeking injunctive relief and treble damages. On September 4, 2020, Novartis filed, and Vetter moved to join, a motion to dismiss the complaint, to transfer the lawsuit to the Northern District of New York, or to stay the suit; and on October 19, 2020, Novartis filed, and Vetter moved to join, a second motion to dismiss the complaint on different grounds. On January 25, 2021, the Company filed an amended complaint seeking a judgment that Novartis's conduct violates Section 2 of the Sherman Antitrust Act based on additional grounds, as well as a judgment of tortious interference with contract. On February 22, 2021, Novartis filed, and Vetter moved to join, a motion to dismiss the amended complaint. On September 21, 2021, the court granted Novartis and Vetter's motion to transfer this lawsuit to the Northern District of New York. As a result, this lawsuit was transferred to the same judge that had been assigned to the patent infringement lawsuit discussed above. On November 5, 2021, the Company filed a motion to stay these proceedings in light of the pending IPR proceeding discussed above. On January 31, 2022, the court denied the Company's motion to stay these proceedings and granted Novartis and Vetter's motion to dismiss the amended complaint. On June 10, 2022, the Company filed an appeal of the District Court's decision to dismiss the amended complaint with the U.S. Court of Appeals for the Second Circuit. An oral hearing before the U.S. Court of Appeals for the Second Circuit was held on October 11, 2023.

*Proceedings Relating to REGEN-COV (casirivimab and imdevimab)*

On October 5, 2020, Allele Biotechnology and Pharmaceuticals, Inc. ("Allele") filed a lawsuit (as amended on April 8, 2021 and December 12, 2022) against the Company in the United States District Court for the Southern District of New York, asserting infringement of U.S. Patent No. 10,221,221 (the "'221 Patent"). Allele seeks a judgment of patent infringement of the '221 Patent, an award of monetary damages (together with interest), an order of willful infringement of the '221 Patent (which would allow the court in its discretion to award damages up to three times the amount assessed), costs and expenses of the lawsuit, and attorneys' fees. On July 16, 2021, the Company filed a motion to dismiss the complaint, which motion was denied on March 2, 2022. On September 18, 2023, the parties entered into a stipulation that narrowed the case to (i) whether any safe harbor defense under federal law applies to Regeneron's use of the invention covered, based on the court's claim construction, by the '221 Patent; (ii) damages for any use by Regeneron found to not be covered by such safe harbor defense; and (iii) whether any use referred to in clause (ii) above was willful.

*Department of Justice Matters*

In January 2017, the Company received a subpoena from the U.S. Attorney's Office for the District of Massachusetts requesting documents relating to its support of 501(c)(3) organizations that provide financial assistance to patients; documents concerning its provision of financial assistance to patients with respect to products sold or developed by Regeneron (including EYLEA, Praluent, ARCALYST, and ZALTRAP®); and certain other related documents and communications. On June 24, 2020, the U.S. Attorney's Office for the District of Massachusetts filed a civil complaint in the U.S. District Court for the District of Massachusetts alleging violations of the federal Anti-Kickback Statute, and asserting causes of action under the federal False Claims Act and state law. On August 24, 2020, the Company filed a motion to dismiss the complaint in its entirety. On December 4, 2020, the court denied the motion to dismiss. On December 28, 2022, the U.S. Attorney's Office for the District of Massachusetts filed a motion for partial summary judgment. On January 31, 2023, the Company filed a motion for summary judgment. An oral hearing on the parties' respective motions for summary judgment was held on July 21, 2023. On September 27, 2023, the court (i) denied in part and granted in part the Company's motion for summary judgment and (ii) denied in its entirety the motion for partial summary judgment filed by the U.S. Attorney's Office for the District of Massachusetts. On October 25, 2023, the court certified for interlocutory appeal a portion of the court's September 27, 2023 order that addressed the causation standard applicable to the alleged violations of the federal Anti-Kickback Statute and federal False Claims Act; and on December 11, 2023, the U.S. Court of Appeals for the First Circuit certified for appeal the court's September 27, 2023 order.

In September 2019, the Company and Regeneron Healthcare Solutions, Inc., a wholly-owned subsidiary of the Company, each received a civil investigative demand ("CID") from the U.S. Department of Justice pursuant to the federal False Claims Act relating to remuneration paid to physicians in the form of consulting fees, advisory boards, speaker fees, and payment or reimbursement for travel and entertainment allegedly in violation of the federal Anti-Kickback Statute. The CIDs relate to

Table of Contents

EYLEA, Praluent, Dupixent, ZALTRAP, ARCALYST, and Kevzara and cover the period from January 2015 to the present. On June 3, 2021, the United States District Court for the Central District of California unsealed a qui tam complaint filed against the Company, Regeneron Healthcare Solutions, Inc., and Sanofi-Aventis U.S. LLC by two qui tam plaintiffs (known as relators) purportedly on behalf of the United States and various states (the "State Plaintiffs"), asserting causes of action under the federal False Claims Act and state law. Also on June 3, 2021, the United States and the State Plaintiffs notified the court of their decision to decline to intervene in the case. On October 29, 2021, the qui tam plaintiffs filed an amended complaint in this matter. On January 14, 2022, the Company filed a motion to dismiss the amended complaint in its entirety. On July 25, 2023, the court in part granted and in part denied the Company's motion to dismiss. On September 1, 2023, the Company filed a second motion to dismiss the amended complaint or, in the alternative, a motion for judgment on the pleadings. A trial has been scheduled for April 2025.

In June 2021, the Company received a CID from the U.S. Department of Justice pursuant to the federal False Claims Act. The CID states that the investigation concerns allegations that the Company (i) violated the False Claims Act by paying kickbacks to distributors and ophthalmology practices to induce purchase of EYLEA, including through discounts, rebates, credit card fees, free units of EYLEA, and inventory management systems; and (ii) inflated reimbursement rates for EYLEA by excluding applicable discounts, rebates, and benefits from the average sales price reported to the Centers for Medicare & Medicaid Services. The CID covers the period from January 2011 through June 2021. The Company is cooperating with this investigation. On November 29, 2023, the U.S. Department of Justice informed the Company that it had filed a notice of partial intervention in this matter.

*California Department of Insurance Subpoena*

In September 2022, the Company received a subpoena from the Insurance Commissioner for the State of California pursuant to the California Insurance Code. The subpoena seeks information relating to the marketing, sale, and distribution of EYLEA, including (i) discounts, rebates, credit card fees, and inventory management systems; (ii) Regeneron's relationships with distributors; (iii) price reporting; (iv) speaker programs; and (v) patient support programs. The subpoena covers the period from January 1, 2014 through August 1, 2021. The Company is cooperating with this investigation.

*Proceedings Initiated by Other Payors Relating to Patient Assistance Organization Support*

The Company is party to several lawsuits relating to the conduct alleged in the civil complaint filed by the U.S. Attorney's Office for the District of Massachusetts discussed under "Department of Justice Matters" above. These lawsuits were filed by UnitedHealthcare Insurance Company and United Healthcare Services, Inc. (collectively, "UHC") and Humana Inc. ("Humana") in the United States District Court for the Southern District of New York on December 17, 2020 and July 22, 2021, respectively; and by Blue Cross and Blue Shield of Massachusetts, Inc. and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. (collectively, "BCBS"), Medical Mutual of Ohio ("MMO"), Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), and Local 464A United Food and Commercial Workers Union Welfare Service Benefit Fund ("Local 464A") in the U.S. District Court for the District of Massachusetts on December 20, 2021, February 23, 2022, April 4, 2022, and June 17, 2022, respectively. These lawsuits allege causes of action under state law and the federal Racketeer Influenced and Corrupt Organizations Act and seek monetary damages and equitable relief. The MMO and Local 464A lawsuits are putative class action lawsuits. On December 29, 2021, the lawsuits filed by UHC and Humana were stayed by the United States District Court for the Southern District of New York pending resolution of the proceedings before the U.S. District Court for the District of Massachusetts discussed under "Department of Justice Matters" above. On September 27, 2022, the lawsuits filed by BCBS, MMO, and Horizon were stayed by the U.S. District Court for the District of Massachusetts pending resolution of the proceedings before the same court discussed under "Department of Justice Matters" above; and, in light of these stays, the parties to the Local 464A action have also agreed to stay that matter.

F-44

Exhibit 31.1

**Certification of Principal Executive Officer Pursuant to**
**Rule 13a-14(a) under the Securities Exchange Act**
**of 1934, as Adopted Pursuant to**
**Section 302 of the Sarbanes-Oxley Act of 2002**

I, Leonard S. Schleifer, certify that:

1. I have reviewed this annual report on Form 10-K of Regeneron Pharmaceuticals, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: February 5, 2024

/s/ Leonard S. Schleifer

Leonard S. Schleifer, M.D., Ph.D.
President and Chief Executive Officer
(Principal Executive Officer)

Exhibit 31.2

**Certification of Principal Financial Officer Pursuant to
Rule 13a-14(a) under the Securities Exchange Act
of 1934, as Adopted Pursuant to
Section 302 of the Sarbanes-Oxley Act of 2002**

I, Robert E. Landry, certify that:

1.  I have reviewed this annual report on Form 10-K of Regeneron Pharmaceuticals, Inc.;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: February 5, 2024

/s/ Robert E. Landry

Robert E. Landry
Executive Vice President, Finance and Chief
Financial Officer
(Principal Financial Officer)